We'll hear argument first this morning in Case 13-7451, Yates v. United States. Mr. Battalamenti? Mr. Chief Justice, and may it please the Court, the natural, sensible, and contextual reading of Section 1519 is that the phrase record, document, or tangible object is confined to records, documents, and devices designed to preserve information, the very matters involved in the Enron debacle. Given the expansive Federal nexus of this statute, which is the intent to influence the proper administration of any matter within the jurisdiction of the United States, it is implausible that Congress would have passed sub salientio, an all-encompassing obstruction statute buried within the altering documents provision of the Sarbanes-Oxley Act. A strong textual indicator that Section 1519 is confined to record-related offenses is the inclusion of the unique term, makes false entry in, which Congress only uses in record-related statutes. The canons of Ejusdem Gennaris and Nosotros Sotis confirm that tangible object is related to the common thread between record and document, which are information, devices. Ginsburg, why should the expression tangible object, which stands alone, is not falsifying documents, why should the word object in 1519 be treated differently than the word other object in 1512c? Justice Ginsburg, in Section 1519, it was passed at the same time as 1512c as part of the Sarbanes-Oxley Act. And as this Court held in Rosello, when Congress includes its different terms in different statutes passed in the same act, it is intended to mean something different. So you think there's a difference between tangible object and other object? Yes, there is. The first reason is that the inclusion of makes false entry in indicates that the phrase record, document, and tangible objects refers to record-keeping. Another difference is that a common-sense standpoint is that records can only be maintained on tangible mediums. And it's a distinguishing factor between record, document, and other objects in 1512c. It's also a limited How is the Internet? You could falsify Internet entries. Yes, but the things that are in the cloud, those aren't tangible items. No, those are tangible items, Your Honor, because these are stored on a hard drive somewhere. The cloud is not existing above. It's merely being housed somewhere else that's accessed through the Internet on a tangible device that's designed to preserve that very type of information. Suppose a typewriter were used to prepare an incriminating document and the typewriter were destroyed. Would that be covered? The typewriter would not be. The piece of paper that the typewriter is inscribing on is a device that's designed to preserve information. It's simply making the information. I understand the argument, and the argument that you make has considerable force about over-criminalizing. But it seems to me that the test you suggest has almost more problems with vagueness, more problems with determining what its boundaries are than the government's test. No, the government's test renders 1512c wholly superfluous. 1519, first of all, the words record, document, and tangible object, our definition is providing meaning to all of them. The government is saying, admittedly, record and document didn't need to be there and Congress had no reason to put them there because it's everything. It's all physical evidence. A tangible object is a discrete device. It is a device that is designed to preserve the information. Alito, if that is the case, then why is it not surplusage? What would be a tangible object designed to contain information that would not fall into the category of record or document? An iPad, a laptop computer, a desktop computer, an iPhone. Those are the things. Alito, those things in themselves don't they have documents, they have something that could be called a document or a record stored in them. That if you have an iPad that's straight from the store, it has nothing, has no information stored in that. Do you think that would fall within the statute? It would fall within the statute because what Congress was trying to intend to do, and given the backdrop of the Enron situation where massive servers were destroyed or deleted or otherwise, they were trying to capture the devices that held information. And you cannot determine what's on the device unless you have the device, regardless of whether or not there's information on it or not. What about destroying a brand-new empty filing cabinet? That is not a device that's used to preserve information. That's a container of something. It's not specifically designed to preserve information. You could put bowling balls in a filing cabinet or otherwise. The information, the distinguishing factor, Your Honor, between a tangible object is that the information is being preserved within it, embedded within it like a computer or otherwise. And Congress needed to use the general phrase tangible object for a reason, because in 2002, an iPad, an iPhone, and many other electronic devices that preserve information didn't exist.  Ginsburg-Ginzburg But then Congress could have said, used, tangible object used to preserve information, and then your case would be solid. But it just said tangible object. It said tangible object. That is true, Justice Ginsburg, that it said tangible object, but it did so using that general phrase following two specific terms, record and document, which is a classic methodology in which the legislature uses. Kagan But could I go back to Justice Ginsburg's first question, because it's my fault, I'm sure, but I wasn't sure I understood your answer. Not only in 1512c1, but there are, you know, I think five times in 1512 from a prior enactment, this same kind of phrase is used, which is record, document, and other object. And you say that we should treat that phrase as it exists many times in 1512, differently from this phrase in 1519, because of the difference between tangible object and other object. And to me, it seems like other object is, if anything, a more classic case of that canon that I can't pronounce the name of, the Ju-STEM whatever. And that's what I count on my colleague for. I deserve that. But to me, it seems like a more, even a more classic case. So I guess I just don't understand why you're treating the two differently. It is, to answer your question, they're being treated differently not simply because of the inclusion of the word tangible, but because of the other words surrounding tangible object, like the unique phase makes vulture entry in, which is not included in any other obstruction of justice statute. Kagan But just because Congress includes more verbs. I mean, the reason Congress includes 20 verbs instead of four is presumably because Congress really wants to sweep in a very wide variety of conduct. And not every verb has to apply to every situation. In fact, we rather presume that they won't. Although this Court has never held that all the verbs, you know, apply to all the situations that they would apply. The only instance that the United States points out is in an amended statute. This statute was written from whoever to the last word of this statute at the same time. It makes sense that they all apply. And makes false entry in is a phrase that can be used only to apply to all of the nouns under our particular construction, and it's unique. It is only used by Congress in record-related statutes. Kagan So your whole argument here really comes down to the fact that Congress put some record-related verbs in there. It does not, Your Honor. There's additional things. We have a limited subject matter under our definition, which makes sense because you have a tremendously broad nexus to any matter within the proper administration of the United States. That's unlike traditional classic statutes. It makes sense that Congress wanted to narrow the subject matter of this particular statute when you're dealing with such a broad nexus to any Federal matter. Kagan I'm sorry. I would think that that cuts against you, that the fact that this is about any matter within the jurisdiction of any agency in the United States shows that it's really not just about corporate fraud, that Congress had a broader set of things in mind. So I would think that that's quite the opposite, that everything about this statute, the any matter, the any record, suggests breadth. Kagan It does not, Your Honor, because if you take the lens and you zoom it out a little bit further, if we look at Section 802 of Title VIII of the Sarbanes-Oxley Act, it's entitled Criminal Penalties for Altering Documents. Two new criminal statutes were created, 1519 entitled Destruction, Alteration, and Falsification of Records, and 1520, which is a 5-year record retention requirement on auditors. They were or else they get a 10-year penalty for that. Congress was referring passing these 1519 and 1520 within Section 802 of Title VIII as a tandem, as another contextual indicator that this is intended to apply to record related matters. Ginsburg Then how do you respond to the illustration that the government gave in its brief? That is, what sense does it make to say you can be indicted under 1519 if you destroy a letter that the victim that you have murdered has sent you, but you can't be indicted under 1519 if you destroy the murder weapon? Congress did not intend 1519 to be applied in that situation. And as you state the questions, Justice Ginsburg, it is remarkable that the government would use 1519 in a murder situation. Ginsburg But do you think you could win – let me back up and ask what I assume was you would say yes to. A letter is shredded. It's a letter from the victim to the lady that turned out to be murderer. That letter is shredded. Does that come under 1519? That does because that is record related, but the knife does not. That falls into the sweep, that particular subject matter, because it indeed is a record. So that would be covered under 1519, but that – not the knife. Congress didn't intend to sweep the knife into 1519, but – Roberts What if the knife had the defendant's name on it? Is that destroying the knife? Is that altering, destroying a record? It is not. One would not, Mr. Chief Justice, refer to an inscription of one's name as a permanent account of an event. It's just an identification. It's an identification on the knife. Well, but I – presumably the same would be true of a lot of documents or records that are destroyed. But in ordinary parlance, one would not consider an inscription on a knife to be it. It's evidence, but it's not a – it's not a document, it's not a record or otherwise. And it doesn't fall within the very limited subject matter that Congress wrote into this particular statute, which is records. Now, what do you say about 1512c? Would the knife fall under that? 151912c, it would make more sense that the knife fall in, and here's why. It's a more classic – Even if the knife was used in the murder, but it was destroyed before anybody was caught? It would – it would – if it was destroyed with the intent to impair that object's availability in official proceeding, which is a classic, classic obstruction statute. So did the government mischarge here? Could they have charged your client with violating 1512c? It's possible the government could have charged that particular thing. I love those words, possible. It is possible. What would have been your defense if they did? My defense would have been something very significant difference between 1512c and 1519. 1519 only requires a knife. I know you were charged with what would have been your defense to 1519. He didn't corruptly do it. And corruptly is wrongful, immoral, depraved, or evil, not simply knowingly, which is required under 1519, which is voluntary and intentionally done. See, corruptly is used in 1512c purposefully in that particular information because it is perhaps a broader class. And it is – Destroying and substituting fish is not a corrupt act? It would have been my defense. Touche. Which was the question, Your Honor. Okay. So what we have in 1519, what we have in 1519 is a remarkable situation when you're looking at Chapter 73 in total, is that you have this incredibly broad nexus to any Federal matter within the jurisdiction of the United States. What can a matter be, as the amicus briefs point out, any of 300,000 Federal regulations that the Federal Government has placed down upon the American people? And what is the – your view, given what you've just said, of the best way to narrow this statute? The best way to narrow the statute, Justice Breyer, is to interpret tangible objects in the company it keeps. And that is a device that is designed to preserve information such that if that device is destroyed, the information contained on that device is destroyed. You still have the problem of the language of the statute covering the destruction of a document, such as an EPA questionnaire, that comes to the door asking about recycling, where you know that the EPA would like to have that back to help them do their official work of finding out how the program works. You believing that that's their business, not yours, tear it up and throw it in the wastebasket. Now, does that fall within the statute? It truly does within the language. And your effort to narrow the statute has nothing to do with that. The narrowing is the document itself. This statute is exceedingly broad. Our interpretation is that the document itself is exceedingly broad. But my problem, of course, is reading this statute and taking your argument in the context that you mean it, which is we must look for a way to narrow this statute, which at first blush seems far broader than any witnessing tampering statute, any obstruction of justice statute, any not lying to an FBI agent statute that I've ever seen, let alone those within Section 15. So what I'd like you to focus on is not your problem, though they're connected, but my problem. Focusing on your problem, Justice Breyer, I would say that it is not an onerous situation for individuals to retain documents. It is not an onerous situation on the American people to read, particularly what we have on flash drives attached to a key chain that could hold thousands of documents. Breyer. I see where you're going. Let's follow you down that road, that you say in many situations it should not be a crime to retain a document, even though you know that the Census Bureau would like it back. Or perhaps the EPA, and perhaps it's nothing more than trying to find out information. But where you end up at the end of the road is that this is void for vagueness, but not for any reason you have yet told us. So what am I to do with the fact, if that is a serious problem, that it has never been argued in this case? Well, I wouldn't accept the invitation that it would be void for vagueness, Your Honor. Why is it vague? It's just incredibly expansive. What is vague about the fact that if you destroy a questionnaire, you've destroyed a document with the intent of, what is it, to impede, obstruct, or influence the investigation or proper administration? What's vague about it? The answer to that, if you want to pose it as a question to me, would be that the void for vagueness, if you look at Skilling, has two branches from Colander v. Lawson, Justice Ginsburg wrote it, a penal statute defining the criminal offense, one with sufficient definiteness that ordinary people can understand. That's what Justice Scalia has just talked about, can understand what is prohibited. But then there is two, in a manner that does not encourage arbitrary and discriminatory enforcement. It's that second part that the doctrine extends the doctrine to statutes that, while they may be clear, are far too broad, well beyond what any sensible prosecutor would even want to prosecute. Well, I agree with that. All right. The answer would be that perhaps a way to reconcile this statute would be not only to accept our position that it relates to recordkeeping generally, but that it requires that it specifically relates to business recordkeeping, where businesses are on notice, such as S.E. filing quarterly requirements or otherwise, that they are to do specific things. And if you look against the backdrop of the Sarbanes-Oxley Act, there is plenty of support that Congress was targeting businesses, corporations, and publicly traded companies. Ginsburg-Miller Isn't running a fishing vessel a business? It would be running a business, Your Honor, it would be. And a possible way to limit this particular circumstance would be to limit it to businesses. It doesn't change the fact that the tangible object doesn't mean everything. Can you tell me the exact consequences for your client, because as I understand it, he was also charged under 22, what is it, 2232? Yes, Your Honor. And he could have gotten the same sentence? No. No, Your Honor. 2232 is destroying a piece of property subject to seizure. That's a 5-year statutory maximum. 1519 has a 20-year statutory maximum. But in fact, that what? 30 days. He ended up taking 30 days by a judge that made that individualized decision under the Booker factors. But we can't count on judges being like that judge around the United States. The fact remains is that if it didn't change the fact that he was charged, he was charged under 2232. Now, but you are only arguing for your client, this is not some kind of class action. No, Your Honor. This is just related to Mr. Yates. But the idea is that, my understanding is that when the Court's writing the opinions, they are thinking about all the judges of the United States and providing guidance to all the judges, providing guidance to the prosecutors when to use particular statutes. And if this Court permits that this statute be applied for the disposal of all physical evidence that would contravene the textual and contextual terms and indicators that I brought through throughout this argument, it is basically the overreaching broad thing that Congress has never passed, despite the government's attempt to inject in the model penal code into this case, which 1519 looks nothing like the model penal code. Kennedy, suppose the fisherman took pictures of the fish, and then he destroyed both the pictures and the fish. Liability? A picture, although Congress didn't intend this in this circumstance, and we would hope the prosecutor wouldn't prosecute for this, it is a permanent account of an event that is preserving the information as to what the pictures, what the fish look like. So the fish thrown overboard, indeed, would be a record and would be covered under this statute, but it wouldn't be a tangible object because it's not a device designed to preserve the information. The photograph isn't? The photo – I'm sorry. The photograph is not a tangible object under our definition. If it were a digital camera and it's stored on a memory card on it, that would be a tangible object. Is a piece of paper a physical object? A piece of paper is a piece of paper, physical object. Is it an object? It's an object as well. But why isn't a film if it's on it? I'm talking not about a film on one of these screens, but an old-time film that you can pick up. A picture, a picture. Well, it is – the film itself is a record. The film itself is a record. It's not – Would its destruction be a violation of this Act? Yes, it would be. It seems very odd that you can throw away the fish without violating the Act, but you can't throw away the picture. Although it's not what Congress intended, it's what requires that this statute read even under our interpretation, which brings up the assertivity of this particular case. This underscores everything about this case that's absurd, is that the prosecutor used this statute in this way. And had he thrown a piece of paper overboard that had the day's catch logs on it, that would have been covered. And we concede that that would have been covered. Well, then why is that absurd? If you concede that that would have been covered, the catch logs, and the prosecutor is trying to do the exact same thing, it's just that he's thrown over a different piece of evidence, why is that such a crazy outcome? The absurdity aspect comes down to perhaps the prosecution in this case, and I didn't mean to overstate that, Justice Kagan. The fact is, is that throwing it overboard, the log, the picture that memorializes what that fish looked like at the picture time is a record, and it would fall within it. And taking a step back to Justice Breyer's question, it would be just as absurd to give him 20 years, though, wouldn't it? It would be extremely absurd, Justice Scalia. But that clearly falls within the statute. I mean, you can't argue that it doesn't. So the only way we could argue. You know, it seems as though this is a – Congress gives very strict penalties to lots of minor things, and – but that's, you know, that's what it does. Congress did something that was very, very strong language to the American people in the Sarbanes-Oxley Act. It added 1519 to cover record-related matters, 20 years. 1512c is related to official proceedings. We've discussed that earlier, 20 years. It upped wire fraud, mail fraud, from 5 years all the way up to 20 years. Why did Congress do that? It did that because it recognized the harm that Enron, Arthur Anderson type of situations did to the financial well-being of this country and the investors in public markets, and it wanted to send a message to the public to not engage in record destruction that could impede, influence the proper administration of any matter. That's why it's important to limit the subject matter of this particular statute to just record-related matters. If there are no more questions, I'd like to reserve the remainder of my time for rebuttal. Mr. Chief. Thank you, counsel. Mr. Martinez. Mr. Chief Justice, and may it please the Court. Section 1519's key phrase, any record, document, or tangible object, unambiguously encompasses all types of physical evidence. That's clear from the standard meaning of those words in ordinary speech and from the broader statutory and historical context in which those words appear. Why are those the key words? Why don't you start earlier? Don't we alter, destroy, mutilate, conceal, cover up, falsify? Those are certainly pertinent in analyzing the reach of tangible object, aren't they? I think they show that Congress was intending to essentially figure out every way that someone might imagine tampering with or destroying or obstructing justice by getting rid of evidence. And so they might shed light on it, but the issue in this case is the meaning of the phrase, any tangible object. I'd like to just say that this is, indeed, a general statute against destroying anything that would impede a Federal. We think this is a general statute that would cover destroying any record, document, or tangible object, which we think, as a matter of plain meaning in history, covers all types of physical evidence. Kennedy, I assume that Congress intended and wanted to clear a void in the criminal statutes to have a general prohibition against destruction of evidence and put it in Sarbanes-Oscley, and you make that argument. Are there any other laws of general application that were also included in Sarbanes-Oscley, or is this the only one? No, there were a number. First of all, Petitioner has conceded that 1512c1 itself is of general application. The other one that I think is the clearest to point to would be 1513e, which was a new provision also added as part of Sarbanes-Oscley that was the anti-retaliation provision. Is there any other provision of Federal law that has a lesser penalty than 20 years that could have been applied to this captain throwing a fish overboard? Well, Your Honor, he was convicted of violating 2232. The statute that Petitioner agreed he could have been charged with, 1512c1, also applies a 20-year penalty. But I'd like to address that. And that's it? There's nothing lesser than that? I'm sure there may have been other provisions. You know, frankly, you come here and, yeah, he only got, what did he get, 30 days or something? Yes, Your Honor. But he could have gotten 20 years. What kind of a sensible prosecution is that? I mean, is there nothing else? Who do you have out there that exercises prosecutorial discretion? Is this the same guy that brought the prosecution in bond last term? Your Honor, I think a couple points on that. First of all, Congress passed a broad statute. The statute is originally drafted and reported out of the Senate Judiciary Committee, had a 5-year penalty. Congress looked very closely at that penalty. It was drafted with 5 years. It was reported out of the committee with 10 years. And it was ultimately at the suggestion of the House of Representatives that it should be 20 years. But I'm not talking about Congress. I'm talking about the prosecutor. What kind of a mad prosecutor would try to send this guy up for 20 years, or risk sending him up for 20 years? Your Honor, we did not ask for 20 years in this prosecution. And let me try to explain why. What did you ask for? You did charge two offenses, 2232, and Yates is not questioning the applicability of that. Is there any guidance that comes from justice to prosecutors? I mean, the code is filled with overlapping offenses. So here's a case where the one statute has a 5-year maximum, the other 20. The one that has the 5-year clearly covers the situation. Is there anything in any kind of manual in the Department of Justice that instructs U.S. attorneys what to do when there are these overlapping statutes? Your Honor, my understanding of the U.S. Attorney's Manual is that the general guidance that's given is that the prosecutor should charge, once the decision is made to bring a criminal prosecution, the prosecutor should charge the offense that's the most severe under the law. That's not a hard and fast rule, but that's kind of the default principle. In this case, that was Section 1519. Well, if that's going to be the Justice Department's position, then we're going to have to be much more careful about how extensive statutes are. I mean, if you're saying we're always going to prosecute the most severe, I'm going to be very careful about how severe I make statutes or how much coverage I give to severe statutes. That's not what we were saying. I think we're not always going to prosecute every case, and obviously we're going to exercise our discretion. In this case, what the prosecutors did was they looked at the circumstances of the offense. And just to emphasize what happened here, Mr. Yates was given an explicit instruction by a law enforcement officer to preserve evidence of his violation of Federal law. He directly disobeyed that. He then launched a convoluted cover-up scheme to cover up the fact that he had destroyed the evidence. He enlisted other people, including his crew members, in executing that scheme and in lying to the law enforcement officers about it. You make him sound like a mob boss or something. I mean, he was caught — the fish were — how many inches short of permitted were the fish? The fish were — it varied fish by fish, Your Honor. And — but we did not — the prosecution in this case was not about the size of the fish. The prosecution was about the destruction of the evidence. And I think it's a — it would be a very strange thing if this Court were to say that the obstruction of justice laws somehow apply differently when the offense is trivial. Did you ask — did you ask for or recommend a particular sentence? We asked for a sentence within the guidelines range, which was calculated by the judge at, I think, 21 to 27 months. The judge ended up giving 30 days. We did not appeal that. We think, you know, that was a reasonable exercise of the judge's discretion, which I think is a very important check on the fact that this is, of course, a very broad statute. And I think a 20-year penalty, of course, would have been too much in this case. But according — Go ahead. But according — if I understand your answer to Justice Scalia, according to the Justice Department manual, any case in which someone destroys a tangible object, you should prosecute them under this statute, because I assume 20 years is the maximum available penalty. Your Honor, we would not — we do not prosecute every fish disposal case. And we do not. So I think if you were looking for some — But the point is that you could. And the point is that once you can, every time you get somebody who's throwing fish overboard, you can go to him and say, look, if we prosecute you, you're facing 20 years, so why don't you plead to a year or something like that? It's an extraordinary leverage that the broadest interpretation of this statute would give Federal prosecutors. Your Honor, we're operating with the statute that Congress passed, and Congress decided that this statute was going to carry a 20-year penalty. And I think the issue in this case, though, is whether Mr. Yates's conduct comes within the terms of that statute, and specifically whether a fish counts as a tangible object. But isn't there a normal obstruction of justice statute that existed before this? There are several, and I think what Congress did was to say that it's not a criminal matter. And suppose, in other words, wasn't this going to a criminal — isn't it a criminal matter? I'm sorry. It wasn't what the official, the government official, was investigating, a minor crime, catching fish that are too small. Am I right? It was a civil offense, Your Honor. It was a civil offense. Yes. Fine. Then isn't there a statute that says that you cannot destroy evidence useful for a civil offense? Well, you know that it's going to be. Yes. And it's 1519 and only 1519. In other words, for many, many years before Sarbanes-Oxley, the Federal government could not prosecute obstruction of justice where there was a civil offense involved. When there was a — in the absence of a pending judicial proceeding, the government could not have prosecuted him under 1503. I'm not asking specific things. I want to know the general criminal law, which I do not know all of it. I always thought there is a crime called obstruction of justice, and I always thought that a person who destroys evidence, where he knows it's evidence, he's been asked to bring it to the proceeding, which may not yet have taken place, he purposely destroys it. I thought that that was a crime. It would make perfect sense for that to be a crime. But it never was in the criminal system. No one was ever prosecuted for it. Under these circumstances, it was not a crime, and that's exactly what Congress realized later. I'm sorry. And what statute did you used to use? Well, in the Arthur Anderson prosecution, they used 1512b-2. But the problem with 1512b-2 was that it had a huge loophole in it. 1512b-2 prohibited Person A from persuading Person B to destroy evidence, but it didn't prohibit Person A from destroying that exact same evidence himself. And so Congress decided it needed to be a loophole. Okay. I guess I can look that up later. But in any case, this is a statute. What will you do with the problem that I put to him? That is my problem. The potential vagueness problem? Yeah. I think there are certain questions that come into play with this statute which are arguably vague. And they don't have to do with the meaning of tangible object. They have to do with the various intent-related elements of the statute. For example, what does it mean to impede, obstruct, or influence justice? What does it mean to be acting in contemplation of a proceeding? And do you need to know that the proceeding is under Federal jurisdiction? Those are the kinds of questions that the lower courts are currently dealing with. They are not presented in this case. Breyer. No, I know, but it's not just influence a proceeding. It is, for example, and here it's obscure, but it means to destroy something in relation to any such matter or case. What matter? In relation to any matter within the jurisdiction of any department or agency within the United States. What? I mean, somebody comes to the door and says, I've been through this. He passes a piece of paper through the door, it's the postal, it's a postman. He says, please send this back. It's our proper duty to deliver the mail. I say, I hate postmen, and I rip it up. 20 years. Your Honor, that would not be covered by the statute. And why wouldn't it happen? It wouldn't happen because you never prosecuted, though I've had my doubts recently. Your Honor, it wouldn't happen because the statute requires bad intent. It requires the intent to impede appropriate influence. Yes, I do. I say, I hate postmen, I don't want them to find out. And I tell four people, I finally got even with the postman. I have the intent. And I'm using a ridiculous example purposely, because by using an example purposely, I'm trying to get you to focus on the question of how possibly to draw a line. And if you can't draw a line, it seems to me that the risk of arbitrary and discriminatory enforcement is a real one. And if that's a real risk, you fall within the vagueness doctrine. There is the whole problem spelled out, and what I do not understand is the relation of this case to that doctrine, or how to decide this case. Your Honor, this case is not related to that doctrine because the Petitioner has not made a vagueness argument. Yes. What this Court has said is that when vagueness challenges are presented, they need to be presented as applied challenges. That hasn't happened in this case. And so there's not a way to limit it. But how do I know, since there could be four ways of trying to limit it, and one way to try to limit it might be what your opponent says? I think that his way is a particularly bad way to address the problem that you – the exact hypothetical that you gave me, because in that case we're talking about a document, a letter, that the postman hands over. And so the problem that your hypothetical poses is not addressed by the solution he gives. So there's a total mismatch. And I don't think there's any reason to think that Congress, even if it had concerns about breadth, would have wanted to solve those concerns by narrowing, in a very unnatural fashion, the word tangible object, whereas, you know, leaving in place the terms record and document. Sotomayor, Mr. Martinez, can we go back to what we started with, with what Justice Breyer started with? If I understood your brief right, up until 1519, the general obstruction statute, 1503, applied only to the destruction of evidence in a judicial proceeding if you got someone else to destroy it. 1503 applied only to pending judicial proceedings. There was a different provision, section 1512b2, that, as the Court considered and addressed in the Arthur Anderson prosecution, 1512b2 did not prohibit single actor destruction. You had to persuade someone else. Okay. So you needed something to punish people who destroyed evidence. And but I see two provisions, 1519 and 1512. Are they superfluous? I think the way to understand those provisions is to understand the fact that, one, they are redundant largely, not entirely, and, two, why are they both in there? It's a very reasonable question to ask. And the reason is, these were rival, essentially rival provisions. They were drafted by different people at different times, and they both ended up in the statute in the way that they were drafted. Oh, that makes it okay. That's fine. I mean, that, you know, that explains how it happens. It doesn't explain how it makes any sense. Well, Your Honor, I think to address the textual component of the superfluous nature of those two provisions, I think it's unambiguous that they are superfluous. And I think Petitioner would agree with us that they are superfluous with respect to records and documents. So we know here that Congress was not intending to avoid surplusage. The only question is whether they thought it would be superfluous with the third term in the list, which is either other objects or tangible objects. Scalia, and the 1519, 1512 only applies for use in an official proceeding. Isn't that right? That's right. It's narrower. Yeah. And this applies to any matter within the jurisdiction of any department or agency of the United States. Is the knowingly requirement of 1519, does that apply to that portion of the statute, or does it only apply to altering, destroying, mutilating, concealing, covering up, or falsifying? Do you have to know that it is within the jurisdiction of a Federal agency? No, you don't. It's a jurisdictional element that typically, as this Court has read other statutes, the knowledge requirement does not extend to the jurisdictional element. Wow. Then it's really. And that's, Your Honor, but that's the court of appeals have said that, and if this Court has concerns with that holding, I think there may be a different case in which to bring that up. Here, of course, Mr. Yates had perfect knowledge that there was a Federal proceeding that was ongoing, and so that concern doesn't affect his case. Yeah, in this case, it's not a problem. But can I go to the other case? 1512, could you have charged it? 1512c1. I think we could have charged it, yes, Your Honor. And we didn't. And I think in the Eleventh Circuit there was some confusion about how you deal with investigations and whether investigations that are probably going to give rise to a proceeding, whether that kind of is close enough to an official proceeding to charge 1512c1. So they made the decision to charge 1519 instead. It was a reasonable decision based on the language of the statute. But I want to emphasize, I think the most important thing that Petitioner's counsel conceded here today was that 1512c1 is a general obstruction of justice statute that was passed as part of Sarbanes-Oxley and covers the destruction of Fish. And I think that's the case. He said it has a stronger state of mind element. It is. The requirement is a little bit more rigorous with respect to 1512c1. But I think the key point is Sarbanes-Oxley prohibits the destruction of Fish. He said that. That's been our position. And I think that undermines the whole theme of his brief and certainly the theme of all the amicus briefs that have been filed here. Their whole point has been it's impossible to imagine that Sarbanes — that Congress could have wanted Sarbanes-Oxley, an Enron-related statute, to prohibit the destruction of Fish. And yet that's the point on which we all agree here today. I'd like to say a few words about the various textual arguments that Petitioner has put forward, the nouns, the verbs, and the headings. First of all, with respect to — with respect to the nouns, I think the historical evidence that we've put forward, I think, show conclusively that the term record, document, and tangible things is very, very similar to the standard formulation that essentially everyone has used to cover all physical evidence in the obstruction of justice context for over five decades. Secondly, 1512c1 confirms that the — Kagan. Could you tell me, Mr. Martinez, where are those other provisions? I think that there are about five of them in 1512. I take it there are many State statutes. Are there? Are there other Federal statutes? The key provisions that we've pointed to in our brief, there are six different provisions of Section 1512, 1512a1b, a2b1. Okay. So there are six in 1512. There are 16 different State provisions that have essentially the same language. I think most of them say record, document, or thing. Some of them say record, document, or other object. But when you say this, I understood your friend to say the tangible object is only used in record statutes. In 1512, it's not. It's object. I mean, tangible, yeah, tangible thing. In 1512, it's object, right? In 1512, it's other object. Well, see, the reason, I mean, maybe that makes a difference, but if you have records, documents, and then a tangible object suggests that the tangible nature of it is what's significant, which suggests that it may be one of the, you know, whatever the drive thing is as opposed to a record. I think it's a point that's not present in the statutes that you were citing. I think it's true that the term tangible is different. I think that the way to understand the term tangible is the way in which Congress and the rules always use the term tangible in connection with things or objects, which is as a way to refer to all types of objects, all types of evidence. We've cited 35 different provisions of the U.S. Code and of the discovery rules in the criminal context and in the civil context. Those are at footnote 3 of our brief. In all of those instances, they use the phrase tangible things or tangible object to refer to everything. And so there's no reason to think that the addition of the word tangible somehow shrunk the scope of the statute. And even if it did shrink the scope of the statute. Scalia, Is such a thing as an intangible object? I'm not, I think. I'm trying to imagine one. I think the you could say that the object of the game of Monopoly is to win all the money, but that's not really what Congress is looking at here. Object not meaning purpose. Yes. I don't think that the word tangible. I agree with what Petitioner said in his opening brief, which is that the word tangible here doesn't really do much. He said that at page 13 of his opening brief. When you get to his reply brief, suddenly the word tangible is doing all this amazing work that is the key difference between this statute and all the other statutes. So then with respect to the You, in your brief, point to the Model Penal Code as the model for 1519. But the Model Penal Code describes a misdemeanor. And this is a 20-year felony. That seems a kind of a mismatch. You know, it, the tradition of the degree of penalty to attach to this offense has changed over time. As you point out, the Model Penal Code did identify this as a misdemeanor. The Brown Commission, which built on the Model Penal Code, treated it as a misdemeanor or as a felony, depending on the severity of the underlying offense. When Congress sat down in the 70s and 80s and was trying to incorporate essentially that provision into Federal law unsuccessfully over a dozen times, it treated it as a felony. And then, of course, Congress in Sarbanes-Oxley Act in both 1512c1 and in 1519 also treated it as a felony with a 20-year penalty. And with respect to that penalty, again, I think it's important to emphasize that the text of that issue here, any tangible object, that was fixed and that was introduced by Senator Leahy at the time when it was only a 5-year penalty. And there's no reason to think that when Congress tinkered with that penalty, it meant to kind of by implication shrink the scope of tangible objects that's at issue here. And I think just to emphasize the textual point, it's a very unusual and I think it's highly implausible to believe that Congress chose this broad and expansive phrase, any tangible object, when really what it really wanted to do was refer only to a very narrow and specific category of information storage devices. Roberts. Well, isn't that like the Bond decision? I mean, you had text that could be read broadly, and yet we suggested, well, Congress could not have meant the Chemical Weapons Treaty to cover a minor dusting of, with toxic, irritating chemicals. I think it's – I think Bond is actually in some ways helpful to the government in this case. Because as I understand the Bond decision, it turned essentially on the everyday meaning of the phrase and Federalism concerns as well. And the everyday meaning of the phrase, I think it was chemical weapon in that case, didn't apply to the chemicals at issue that Ms. Bond used. But in this case, the everyday meaning of the phrase tangible object applies to all tangible objects. Everyone – if you stop someone on the street and ask them, is a fish a tangible object, the answer would almost certainly be yes. And so – and you don't have as well what you had in Bond, which was the concern about Federalism and the application of that canon. But what if you stopped them on the street and said, is a fish a record, document, or tangible object? I think if you asked them that question and you pointed them to the fact that – I don't think you would get a polite answer to either of those questions. Your Honor, maybe I could say a word. Having talked about the nouns, maybe I could say a word about the verbs in this statute, because they make a – they place a lot of emphasis on the makes-of-false-entry language. Petitioner's argument rests on this premise that each of the verbs has to work with each of the nouns. But that premise is flawed. It's not consistent with how Congress drafts statutes. It's not consistent with Petitioner's own interpretation. And I think there's significant tension with this Court's decision last year in Roberts. Let me say a word about each. With respect to how Congress drafts statutes, I think you only have to look to Section 1505 of the statute to see that that's yet another example of where Congress has used – had a bunch of verbs and a bunch of nouns, and some of the nouns don't work with some of the verbs. You can't mutilate oral testimony. With respect to Petitioner, the inconsistency with Petitioner's own theory, Petitioner agrees that 1519 covers the destruction of an e-mail in electronic form. But you can't mutilate an e-mail. No one would ever talk like that. Similarly, he says that it would apply to a blank hard drive. But no one – I've never heard anyone talk about falsifying a blank hard drive. So the implications of his argument are inconsistent with where he wants the Court to go. And then finally, the Roberts case. Roberts dealt with a circumstance. It wasn't perfectly analogous, but it raised a similar problem, which is that there was a broad statute, it had many different applications, and there was some language in the statute that was a little bit awkward and a little bit superfluous with regard to some of the applications of the statute. And the response that the Court had to that problem was not to say, well, the statute doesn't apply to those circumstances. The response was to say that that's the linguistic price to be paid, linguistic price to be paid for having a broad statute. And then the Court said, Congress does not need to write extra language specifically exempting phrase by phrase applications with respect to which a portion of a phrase is not needed. I think that was right in Roberts, and I think the same principle applies here. Finally, Your Honor, with respect to the headings, a couple points. First, I think the headings in this case, as in the Lawson case that this Court also dealt with last term, also involving Sarbanes-Oxley, the headings here are just obviously and unambiguously under-inclusive. The heading is a shorthand reference to the general subject matter. It's not intended to spell out what the operative provisions say or to mirror those operative provisions. It's obviously under-inclusive.  It omits two of the nouns. The heading argument, I think, is especially unreliable in this context, where if you look at what Congress did with Sarbanes-Oxley generally, it was not paying very close attention to the headings under which it put various provisions. That's true with respect to 1519. That's true with respect to 1514, the statute that was at issue in the Lawson case. And it's also true with respect to Section 1512c1. Section 1512c1 prohibits me from or prohibits any person from destroying evidence, but they put that provision inside the witness-tampering statute. It doesn't make sense. It doesn't fit there. And that just shows that Congress was not paying close attention to the headings and that that shouldn't drive the outcome of this case. Alito Well, Mr. Martinez, you are really – I mean, you have arguments on all of these points, but you are really asking the Court to swallow something that is pretty hard to swallow. Do you deny that this statute, as you read it, is capable of being applied to really trivial matters, and yet each of those would carry a potential penalty of 20 years? And then you go further and say that it is the policy of the Justice Department that this has to be applied in every one of those crazy little cases. I mean, this involved a business and a number of fish. What if it was one fish? What if it was one undersized fish that was caught by a fisherman in a national – on Federal land? That would apply here? Martinez I want to answer that question, but I just want to clarify what I said about our policy. Our policy is not that we prosecute every trivial matter. That is not our policy. I want to be very clear about that. Alito Oh, I understand that. But if you choose to – if you want to find the guy who caught one trout that was undersized on Federal – on Federal land, you want to charge him with whatever regulatory offense that would be, you have to charge this, too, because this is the more severe offense. We only have to charge this if the person with knowledge and the intent to obstruct the administration of Federal law deliberately takes that one fish and throws it overboard or destroys it so as to escape liability. That's what the statute says.  That's what the statute says. Sotomayor Now he sees the inspector coming toward him, throws it in the lake. Martinez That's what the statute says, Your Honor. Now, I appreciate the force of the hypothetical, and I understand it. But I think I want to – the point I want to emphasize, because maybe there's – I understand why the Court might have concerns about that. The problem – there's a mismatch, though, between Petitioner's argument and the hypothetical. The problem with the hypothetical is that this statute might be harsh in certain particular outlier applications. But Petitioner is not arguing for some sort of de minimis rule. He's not saying that this statute can't be applied in trivial cases.  statute. Kennedy He has no doctrinal basis to make that argument other than to say that there is such a doctrine as prosecutorial discretion, and A, that it's enforceable, and B, that it has some substance. And you've indicated that it has neither. Martinez I think, Your Honor, I don't think that – I think prosecutorial discretion is not an issue that he's raised. I don't think that it's an issue in light of this Court – what this Court has said about prosecutorial discretion. I don't think that would be a basis. Kennedy It seems to me that we should just not use the concept or refer to the concept at all anymore. Martinez Well, Your Honor, I think that – that, again, to go back to some of the answers I was giving earlier, I think that the concerns that the Court has flagged about the potential breadth of this statute, they're serious and they're kinds of concerns that courts and juries and judges are going to take into consideration when they're dealing with any of these crimes. But the issue in this case is not – is not that. The issue in this case is what is – what did Congress intend with the term any tangible object? Breyer All right. So if that's so, then that's the dilemma. Suppose I worry about Justice Alito's single fish? In the case of a camper who kicks an ember away knowing you shouldn't have built the campfire, or picks a flower knowing you're supposed to let wild flowers blossom, what about that 20 years and you could multiply those beyond belief? So if that's the problem, does his client go to prison because we've just assumed that problem away from the case? Martinez No. We do not. Breyer How do we handle it if, as you say, there is a genuine concern in that respect, but it wasn't argued here? Martinez I think that you write a very narrow decision that says this case is about the meaning of the term any tangible object. And if the case, the ember case comes up or the postman case comes up, then if the arguments are made, then I think those arguments can be fleshed out, they can be briefed, they can be thought through by the parties, and I think they'll be properly presented to the Court in that case. In this case, though, this case presents just a common sense, straightforward question of statutory interpretation. Does the phrase any tangible object actually mean what Congress said? Does it refer to all tangible objects? We think that the unambiguous answer, based on the text of the statute, based on the history of the statute, is clearly yes, and we ask this Court to affirm. Kennedy Perhaps Congress should have called this the Sarbanes-Oxley-Gruper  Martinez Perhaps, Your Honor. Roberts Thank you, counsel. Mr. Badalamenti, you have four minutes remaining. Badalamenti I'll be brief. Regarding Justice Breyer's question regarding the void for vagueness, the government stated that we had not stated that in our brief. It's on pages 25 and 26, as well as squarely raised in footnote 7. Breyer Yes, but it wasn't raised below, and these are very difficult issues, and it's sort of flying blind not to have lower court opinions and the thing fully argued out before we get it. Badalamenti Yes, Your Honor. We just wanted to point out where it was in the briefing in this court. The tangible object notion is extremely important, which the justices have pointed out under Rosello, you have the fact that you have two statutes passed in the same act. One includes different language than the other to presume that that language is included in there intentionally in that major significance, makes false entry in all of the statutes that are we've cited them in our brief in footnote 4, that reference of the reply brief. All of them are record-related statutes, every single one of them, as a textual indication of what Congress had met. The breadth of the statute regarding any Federal matter is an extraordinary thing that the American people will be walking on eggshells for if this Court were to not limit at least the subject matter of this. And the last point. Scalia It doesn't entirely solve that problem, simply the narrow text. Badalamenti It does not, Your Honor, and Mr. Yates would open up any other constitutional issues as well, but no, certainly the last comment is directed as that. For more than 200 years, the United States has existed without this mega, all-inclusive obstruction of justice statute with the intent to impede anything, any matter, that the possibility of the United States could or may or may never be interested in. It didn't create it buried within the Sarbanes-Oxley Act, and this Court shouldn't put it in there now. For these reasons, Mr. Yates requests that this Court vacate the conviction under Section 1519, reverse remanded decision of the Eleventh Circuit. Thank you. Roberts Thank you, counsel. The case is submitted.